BERGEN BEACH LAND CORPORATION, Plaintiff, *v.* THE CITY OF NEW YORK et al., Defendants.

(Supreme Court, Kings Special Term, July, 1919.)

**Contracts — breach of — when valid contract cannot be rescinded or altered — municipal corporations — injunctions.**

Where a valid contract is made by a municipal corporation or a board thereof either by way of an ordinance or resolution, it cannot be rescinded or altered without the consent of the other party.

Where the damage resulting from a breach of contract cannot be adequately determined or there is a great uncertainty as to its amount a court of equity will restrain the threatened injury.

MOTION for the continuance of a preliminary injunction.

Truman H. & George E. Baldwin (Ralph L. Baldwin, of counsel), for plaintiff.

William P. Burr, corporation counsel (Charles J. Nehrbas, of counsel), for defendants.

BENEDICT, J.    This is a motion for a continuance during the action of a preliminary injunction restraining the defendants from adopting any resolution or taking any action rescinding, amending or otherwise modifying or affecting the bulkhead, pier head, channel, main channel or basin lines at and about Bergen Beach, Jamaica bay, city of New York, established by the commissioners of the sinking fund in July, 1917, and by the secretary of war in October, 1917, and from applying to the secretary of war for any change thereof and from prosecuting any such pending application.    The papers presented upon this application are somewhat voluminous, but the question which I have to decide upon this motion will not require an elaborate discussion of the facts in the case.    It will be necessary for the trial court which will hear this case upon the merits to determine judicially the facts which are involved in the dispute.    That duty does not now devolve upon me.    The only question which I am called upon to decide upon this motion is whether the plaintiff has made out a *prima facie* case sufficient in law, in the absence of countervailing proof as disclosed by or in the opposing affidavits, to render it probable that the plaintiff will succeed upon the trial.

The facts upon which the plaintiff relies may be summarized as follows:  Prior to July 26, 1917, Percy

Supreme Court, July, 1919.          [Vol. 108.

G. Williams and Thomas Adams, Jr., were the owners
of certain uplands and meadow lands and lands under
water situated on and near Jamaica bay and its
tributary streams in the thirty-second ward of the
borough of Brooklyn of the city of New York and
known as Bergen Beach, and containing in all
upwards of 270 acres. Previous to July 26, 1917, the
said Williams and Adams had had negotiations with
the sinking fund commissioners of the city of New
York concerning the settlement of the disputed bound-
ary lines between their lands and the lands of the city
of New York, and upon said last mentioned date there
was presented to the commissioners of the sinking
fund, on behalf of the said Williams and Adams,
a form of agreement providing for a new plan of
water front improvement at Bergen Beach, Jamaica
bay, for the settlement of the disputed boundary lines
in respect of the property of the said Williams and
Adams, together with an approval of such agreement
on the part of the then commissioner of docks of the
city of New York and on the part of the deputy and
then acting comptroller of said city. Thereupon a
resolution was duly adopted by the commissioners of
the sinking fund, who act as trustees for the benefit
of the bondholders of the city of New York with
respect to the property owned by the city of New
York, which recited that the said commissioners were
authorized to settle disputes as to boundary lines
under the provisions of section 205 of the Greater New
York charter and that a dispute had arisen between
the said Williams and Adams and the city of New
York as to the location of the mean high-water line
in front of the property owned by them, and whereby
it was resolved that the commissioners of the sinking
fund approve of the proposed agreement subject to
the approval thereof by the corporation counsel as

to its form, and whereby it was further resolved that the corporation counsel be requested to prepare all papers necessary to carry said agreement into effect, and whereby it was further resolved that it should be the duty of the mayor to execute such instrument or instruments on behalf of the city of New York and the city clerk to attest the same when prepared and approved as to form by the corporation counsel. The said agreement was approved as to form by the corporation counsel and was duly executed by the said Williams and Adams. The resolution above referred to was unanimously adopted by the commissioners of the sinking fund, all the members being present and voting in favor thereof as is required by the provisions of said section 205 of the Greater New York charter.

Thereafter on October 22, 1917, the city of New York and Williams and Adams made application to the secretary of war for a change and modification of the then existing government bulkhead, pier head, basin and channel lines, including said main government channel, and the secretary of war granted such application and established as the government lines thereof certain new lines which are shown on the map forming part of the agreement above mentioned. Thereafter, pursuant to a contract theretofore entered into, the said Williams and Adams, on November 26, 1917, conveyed the title in fee to said property to the plaintiff in this action, subject to the above mentioned agreement with the city of New York, all the covenants and conditions of which agreement this plaintiff assumed and agreed to fulfill and perform.

The deeds required to be executed under the provisions of the said agreement have not been executed or delivered on the part of the city of New York. The plaintiff alleges that the reason why the same were not executed or delivered by the city of New

York, although the plaintiff was at all times ready to execute and deliver the same and did in fact execute the same and tender them to the city, grew out of the change in the personnel of the government of the city of New York which occurred upon the 1st day of January, 1918. It alleges that it requested the execution of the deeds on behalf of the city before the change in administration took place, but that such request was not complied with on account of the request of the incoming mayor that all matters requiring official action on the part of the city be postponed and referred to the incoming administration, which request was in the present instance complied with.

Early in the year 1918 the new and present commissioners of the sinking fund took action upon a proposed new plan for the improvement of the water front and harbor of the city of New York on Jamaica bay and adjoining waters as a substitute for the former plan which was referred to in the aforesaid agreement, and announced that application would be made by them to the secretary of war for the rescission of the bulkhead, pier head and basin and channel lines, including the main channel line, provided for in the said agreement between the plaintiff's said grantors, Williams and Adams, and the city of New York and adopted by the secretary of war on November 22, 1917. The plaintiff alleges in its complaint and in the moving affidavits many facts upon which it predicates the claim that, if the city of New York shall be allowed to rescind the agreement made with Williams and Adams, the plaintiff will suffer irreparable financial loss and injury which cannot be compensated in damages. In particular, the plaintiff claims that it and its predecessors in the title to Bergen Beach, immediately after the approval of the new lines and in contemplation of the carrying out of

the said agreement by the city of New York, cancelled the leases of all of its tenants occupying its lands as an amusement park, removed many of the buildings and amusement structures situated thereon, paid off a mortgage of upwards of $50,000 on the property, and arranged to secure the sum of upwards of $100,000 with which to commence the construction of bulkheads to carry out its part of the agreement at a cost of $150,000 or upwards, and also that it employed an engineer and executed and acknowledged the necessary documents prepared by the corporation counsel and performed all other acts required to be performed on its part to carry out the provisions of said agreement.

It is the contention of the plaintiff that the city, just as any private individual, has no legal right to refuse to carry out the terms of its agreement, the other party to the agreement not being in default and the agreement not having been entered into on the part of the city as the result of fraud, mistake or any other illegal consideration. The plaintiff claims that it would be impossible to determine the pecuniary damage which it would suffer if the city were to be permitted to rescind the agreement.

While I am of the opinion, and have expressed it in various cases in which I have sat, that this court should use its power to grant injunctive relief very sparingly in litigation involving the exercise of discretion and judgment upon the part of the officials of the city of New York and should leave it to the voters and taxpayers of the city to remedy through the exercise of the elective franchise any official abuses on the part of officials, cases will arise at times wherein the court ought to intervene during the pendency of an action in order to prevent irreparable harm and injury which might result before the trial from official action

which will become the subject matter of judicial investigation upon the trial. The city of New York acted in the present case, in the adoption of the resolution of July 26, 1917, not in its governmental capacity alone, but also through the appropriate officials, the board of sinking fund commissioners, in its private capacity as the owner of real property. One of the main objects of the agreement above referred to was to settle the dispute which had, for a long time prior to the making of the agreement, existed between the city and certain property owners including Williams and Adams in regard to their respective boundary lines and which disputes had been the subject of much controversy and litigation. While it is true that the agreement in question may have been an advantageous one for the property owners in securing a closer approach to the water front of Jamaica bay than they would have under the changed location which the present city officials are now endeavoring to secure, it was not so apparently or really disadvantageous to the interests of the city when made as to call for judicial condemnation when attacked collaterally as it has been since the change in administration took place. At all events, unless the element of fraud or other illegality in law entered into the essence of the agreement, the city of New York ought not to be permitted, simply because a change of administrative policy has supervened, to violate or rescind the agreement. When city officials have deliberately acted in reference to the property belonging to the city and have received the benefit of such action, those who deal with the city upon the faith of such official action are entitled to be protected against loss arising from a change of mind on the part of the former or of new officials; at least where such a change would involve a breach of contract with the persons dealing with the city. The

principle of estoppel ought to bind the city where others have dealt with it on the faith of its official action just as in the case of private parties. It is well settled that a valid contract may be made by a municipal corporation or a board thereof by way of ordinance or resolution which, like other contracts, cannot be rescinded or altered without the consent of the other party to it. *Argus Co.* v. *City of Albany,* 55 N. Y. 495, 501; *Parr* v. *Village of Greenbush,* 72 id. 463, 466; *Village of Bolivar* v. *Bolivar Water Co.,* 62 App. Div. 484, 486; *Van Arsdale* v. *Justice,* 75 Misc. Rep. 495, 498; *Kahlen* v. *State of New York,* 223 N. Y. 383, 387, 388; *City of Troy* v. *Troy & L. R. R. Co.,* 49 id. 657; *Matter of City of Syracuse,* 224 id. 201.

It is also settled law that where the damage resulting from a breach of contract cannot be adequately determined or there is a great uncertainty as to amount, equity will interfere and forbid the threatened injury. *Dailey* v. *City of New York,* 170 App. Div. 267, 274; affd., without opinion, 218 N. Y. 665.

In conclusion, therefore, and without any desire to prejudge the merits of this case in advance of the trial, I think that the plaintiff has shown sufficient facts to require a continuance of the temporary injunction *pendente lite.*

Motion granted, with ten dollars costs.