BERGEN BEACH LAND CORPORATION, Plaintiff, *v.* THE CITY OF NEW YORK and Others, Defendants.

(Supreme Court, Kings Special Term for Trials, November, 1920.)

Specific performance — when will not be decreed — contracts — lands under water in Jamaica bay — city of New York — upland owners—Greater New York Charter, §§ 205, 817, 818-a.

An agreement relative to the development of Jamaica bay signed only by the predecessors in title of an upland owner at that place and approved by the commissioners of the sinking

fund of the city of New York is sufficient to make a valid contract.

The Greater New York Charter (§§ 205, 818-a) empowering said commissioners to settle and adjust disputes "between the city and private owners of property in respect to boundary lines" and to fix and determine the line of high water and also (§ 817) to fix and establish bulkhead and pierhead lines, vested in the commissioners ample power to make the agreement in suit.  (Pp. 493, 494.)

The lands involved herein lie under water and were granted to plaintiff's predecessors in title as upland owners.  Litigation concerning the boundary line, though resulting in their favor, left the boundary lines still in dispute, and an agreement was made fixing the boundary line between the property of plaintiff and the city of New York, but necessarily involved in and inseparable therefrom, the city agreed to establish harbor lines in certain locations and to dredge the channel accordingly. *Held,* that the establishing of harbor lines and dredging of channels being a legislative act and subject to change by the United States government, specific performance of the agreement will not be decreed, but plaintiff left to its action for damages.  (Pp. 495-497.)

Action to compel specific performance of contract.

Truman H. & George E. Baldwin (Ralph L. Baldwin, of counsel), for plaintiff.

John P. O'Brien, corporation counsel (Charles J. Nehrbas, of counsel), for defendants.

Cropsey, J.  This action involves the question of the development of Jamaica bay.  The plaintiff, as the owner of a tract of land there, seeks to have enforced a contract made with the commissioners of the sinking fund of the city of New York relative to that development.  While plaintiff's complaint asks for an injunction the brief of his counsel states that that is not sought.  Nor does the plaintiff in this action

seek damages, and no proof of any damage has been offered.

The first question is whether there is a valid agreement existing and, if so, then whether the court should decree specific performance of it. There is no writing signed by all the parties but the agreement was signed by the plaintiff's predecessors and was approved by the sinking fund of the city of New York and appears in full in the latter's minutes. This is entirely sufficient to make a valid contract. In fact the corporation counsel makes no contention to the contrary. He contends that the agreement is invalid for other reasons which will now be considered.

The first point of the corporation counsel is that the agreement was not authorized by the charter. Without detailing the terms of the agreement they may be summarized as follows: the settlement of a dispute as to the location of the boundary line between the plaintiff's property and that of the city, this boundary line being somewhere within the navigable waters of Jamaica bay, and the deeding by the respective parties each to the other of all their interest in the property on the other side of the dividing line thus established; the conveying of other property to the city to be used as basins in connection with the improvement; the agreement by the city to dredge a canal in front of the plaintiff's property and elsewhere, and to fill in the plaintiff's land with a portion of the excavated material, and also to fix the bulkhead and pierhead lines, and to secure the approval of the United States government to the lines as thus fixed. The charter expressly gives to the sinking fund power to settle and adjust disputes " between the city and private owners of property in respect to boundary lines " and also to fix and determine the line of high water. Greater N. Y. Charter, §§ 205, 818-a. The

power to fix and establish the harbor lines, that is, bulkhead and pierhead lines, is also conferred upon the sinking fund. § 817. I think there is ample power vested in the sinking fund to make the agreement in question.

The next contention is that the agreement is void because it attempts to provide for the permanent establishment of harbor lines. It is true the agreement does provide for the establishment of such lines but I see nothing in it to indicate that the lines so fixed are never to be changed. This question will be considered further in discussing the right to compel the specific performance of the contract. The sinking fund has power, as has been pointed out, to fix the harbor lines but they in turn may be changed by the United States government. That is, the city lines cannot project further into the navigable waters than permitted by the United States regulations. Under the agreement in question the city of New York has already obtained the approval of the United States government to the change of the harbor lines as called for in the agreement with the plaintiff's predecessors.

Another contention is that the act of the city authorities in locating harbor and channel lines is a legislative act. But conceding this to be so the agreement is not illegal. Nor does the agreement providing for the dredging of the canal seem in any way to violate any statute of the United States. It is a fact that the channel to be dredged under this agreement is not on the exact lines of the channel proposed by the United States government. But the dredging of this channel would in no way seem to interfere with the dredging of the channel proposed by the United States government even if the latter did not change its plan to conform to the plan of the city authorities.

The remaining contention that the contract is illegal,

is that it involves the expenditure of money and that no appropriation therefor has been made by the board of estimate of the city as required by section 1541 of the charter. But an appropriation of nearly $1,000,000 was made in connection with the project of the development of Jamaica bay and the bulk of that appropriation is still unexpended. The further suggestion that the contract violates section 10 of article 8 of the Constitution of the state seems to be without force. The agreement does not seek to improve private property at the public's expense. The provision for filling in the plaintiff's land was a part of the consideration for the deeding to the city of property, and in all probability it would be much more economical for the city to deposit the dredged material upon the plaintiff's land than to have it carted away.

I think the contract is valid but it does not follow that the specific performance of it should be decreed.

The plaintiff's lands involved herein lie under water and were granted to its predecessors as upland owners by the state of New York. There was some question as to the location of the boundary lines of the property so conveyed by the state and litigation resulted which was decided in favor of plaintiff's predecessors. This left the boundary lines still in dispute and then the agreement in question was made fixing it. After the conveyance by the state of the plaintiff's property the state, by an enactment of the legislature, conveyed all the title remaining in it in the lands in Jamaica bay, including those under water, to the city of New York. If the agreement in question merely fixed the boundary line between the property of the plaintiff and the city of New York it should be enforced. But coupled with that, as has been shown and necessarily involved in it and made inseparable from it is the agreement by the city to establish harbor lines in cer-

tain locations and to dredge the channel in accordance therewith. I think it cannot be gainsaid that the establishing of harbor lines and the dredging of channels is the exercise of a legislative power. *Bedlow* v. *New York Floating Dry Dock Co.,* 112 N. Y. 273, 274; *Matter of City of New York,* 168 id. 134, 145; *Sage* v. *City of New York,* 154 id. 61, 77; *Langdon* v. *City of New York,* 93 id. 129, 154; *Greenleaf Johnson Lumber Co.* v. *Garrison,* 237 U. S. 251, 268. It is similar to the laying out and opening of streets. *McCabe* v. *City of New York,* 213 N. Y. 468; *Matter of City of New York (Ely Avenue),* 217 id. 45. Being a legislative act it may be changed from time to time. *Philadelphia Co.* v. *Stimson,* 223 U. S. 605, 635–638; *Bedlow* v. *New York Floating Dry Dock Co.,* 112 N. Y. 273. In fact the location of the channel has already been changed by action of the present city administration so that as now planned the plaintiff's property will not abut on it.

I think that specific performance should not be decreed but that the plaintiff should be left to its action for damages. If specific performance were decreed it would not give to plaintiff the permanent right to have its bulkhead abutting on the channel; for even were that done the city could later change the location of the harbor lines and the channel, and the plaintiff would have only a claim for the damages it sustained. In fact it could relocate them just as it now proposes doing. The result therefore of having decreed specific performance would be only to increase the plaintiff's damages, if later a change were made, and not to secure to the plaintiff any lasting or permanent right. The court could not have compelled the adoption of the plan of improvement provided by the contract before the contract was made, for that involved the exercise of a legislative function; and it

cannot now compel the execution of the scheme. The court may enforce constitutional limitations upon the exercise of legislative power, but cannot control the exercise of the power itself. Cooley Const. Lim. 184. Specific performance of an executory contract should not be decreed against a municipality where the contract involves the exercise of legislative power. The parties damaged by the failure of the city to live up to such an agreement should be left to their action at law.

It is unfortunate that it seems necessary to render this decision. The development of Jamaica bay has been delayed all too long and the need of it is but little short of imperative. The growth of the city, the extension of its commerce, and the prosperity of its citizens are all involved and depend in very material degree upon it. But it is held up by the action of the city administration in undoing what had been done by its predecessor. That there was no partisanship in the action of the former administration seems apparent, for the vote of the sinking fund was unanimous and that body was then composed of representatives of the different political faiths. It may be that the agreement then made was not the best or wisest but still it would be better to have some improvement made than none. The policy of vacillation maintained by the city is costly alike to it and its inhabitants. An administration that merely undoes what has been done previously is moving backwards. If the inhabitants' rights are to be considered and promoted there must be a forward movement. Constructive work must be planned and accomplished. The city administration that does things to develop the city's resources is the one that best serves the people. And the failure of the present administration to carry out the contract pre-

viously made, makes the city liable for the damages plaintiff has sustained.

After this action was begun plaintiff moved for an injunction restraining the sinking fund from taking action at variance with the provisions of the agreement. This motion was granted. *Bergen Beach Land Corp.* v. *City of New York,* 108 Misc. Rep. 70. And an order thereon was affirmed by the Appellate Division. 192 App. Div. 884. The Special Term decision seems to have turned principally upon the point that the complaint set forth facts which might constitute an estoppel against the city; and while the Appellate Division expressly says it does not pass upon the propriety of the injunction it does refer to the claim in the complaint that the doctrine of estoppel can be invoked and adds: ''that proposition is not without authority which tends in dicta at least **to** support it.'' Upon the trial there was no proof of those allegations of the complaint upon which the claim of estoppel was based. Most of the cases cited in the Special Term opinion in which contracts made by a municipal corporation had been enforced did not involve the exercise of a legislative power. And in *Matter of Van Arsdale* v. *Justice,* 75 Misc. Rep. 495, while the act involved was of a legislative character the writ sought and granted was not against the board exercising that power but against an official whose duty it was to carry it out. In *Matter of City of Syracuse,* 224 N. Y. 201, the legislative act had resulted in the city becoming vested with the title to the property in question and so it was held the city could not then '' change its mind.''

There must be judgment for the defendant but without costs.

Judgment accordingly.