PEOPLE OF THE STATE OF NEW YORK ex rel. ROSINA J. RICHARDS, Relator, *v.* JOHN F. HYLAN, as Mayor of the City of New York, Defendant.

(Supreme Court, Kings County, August, 1921.)

Mandamus — when may issue against a public officer — peremptory mandamus issued against mayor to execute release.

A writ of mandamus may issue against a public officer to compel the doing of a ministerial act.

Where a contract for public work or services has been performed by the opposite party and all that remains is the mere execution by a public official of the consideration for such performance and delivery thereof, mandamus is the proper remedy to compel such action.

The acceptance of a resolution duly adopted by the commissioners of the sinking fund whereby the city of New York agreed to release any claims it had in certain property belonging to the relator, in consideration of the payment by him of certain moneys and of all unpaid taxes and assessments, by payment of the moneys called for, constitutes a contract.

Where upon the payment by relator of the moneys, taxes and assessments, the required release was drawn and approved by the corporation counsel and the comptroller, a writ of peremptory mandamus will issue to compel the mayor, whose duty it was both under the statute and the resolution to execute the release, to execute the same.

APPLICATION for a writ of mandamus.

Richards, Smyth & Conway (Edward A. Richards, of counsel), for relator.

John P. O'Brien, corporation counsel (Charles J. Nehrbas, assistant corporation counsel), in opposition.

CROPSEY, J. The relator applies for a mandamus requiring the mayor to do a ministerial act. Under

Supreme Court, August, 1921. [Vol. 116.

the provisions of law the commissioners of the sinking fund passed a resolution whereby the city agreed to release any claims it had in certain property belonging to the relator in consideration of the payment of certain moneys and of all unpaid taxes and assessments. The relator paid the money called for to the city and also paid all the taxes and assessments. The required release was drawn and approved by the corporation counsel and the comptroller and sent to the mayor for signature. Under the statute and the resolution of the sinking fund commissioners the mayor was to execute the release. This he failed and refused to do although giving no sufficient reason. This proceeding seeks to compel him to execute the release. It is apparent from a mere statement of the case that the city cannot take and keep relator's money and then refuse to give the release for which the money was paid without being guilty of an act of dishonesty. But the corporation counsel raises some technical objections. In the first place it should be noted that there is no answer in any form from the mayor. The only paper submitted in opposition is an affidavit of an assistant corporation counsel, but this is not submitted for or on behalf of the mayor nor in his name. And no reason is shown for the failure of the mayor to deny the allegations of the petition unless it be that they are true. The affidavit of the assistant corporation counsel states that " deponent " denies certain specified allegations of the petition. This is not a denial by the mayor but merely a denial by the assistant corporation counsel, which denial is wholly insufficient and quite irrelevant. The allegations of the petition therefore stand admitted.

The resolution adopted by the sinking fund and the

acceptance of it by the relator by the payment of the moneys called for constitute a contract. *Louisiana* v. *Pilsbury,* 105 U. S. 278, 288; Dillon Mun. Corp. (5th ed.) § 784; *Bergen Beach Land Corp.* v. *City of New York,* 113 Misc. Rep. 491, opinion by Cropsey, J. The corporation counsel does not dispute this but contends that mandamus will not issue to compel the performance of the contract obligations of a municipality. The cases cited in support of this contention do not go to the extent claimed. They hold only that mandamus does not lie to compel the prosecution of a public work or the acceptance of a bid therefor. That is entirely different from the situation here presented. Mandamus will issue against a public officer to compel the doing of a ministerial act. *People ex rel. Weatherwax* v. *Watt,* 115 Misc. Rep. 120; affd., 197 App. Div. 929. And where a contract for public work or for public service has been performed by the opposite party and all that remains is the mere execution by a public official of the consideration for the performance and the delivery thereof mandamus is the proper remedy to compel such action. *People* v. *Mayor, etc., of New York,* 10 Wend. 395; *People ex rel. Ready* v. *Mayor,* 144 N. Y. 63; *People ex rel. Beck* v. *Board of Aldermen,* 18 Misc. Rep. 533.

Another point of the corporation counsel is that as the resolution of the sinking fund authorizing the settlement and release has been rescinded the mayor has no power now to sign the paper. This is without force. The resolution was rescinded so far as that were possible. But it was not done until after relator had paid to the city the money required in order to obtain the release. Hence the rescission could not affect relator's right to insist on the contract being fulfilled. *People ex rel. New York Central & H. R. R.*

*R. Co.* v. *Mealey,* 224 N. Y. 187; *Matter of City of Syracuse,* Id. 201. See, also, Gen. Const. Law, § 93.

The remaining point is that the relator did not pay the taxes and assessments within the time provided by the resolution. The resolution provides that the claimant " shall within ten days from the adoption of this resolution make payment to the Comptroller of the City of New York at the rate of $200 per lot of 20 feet by 100 feet for each and every lot to be released to him, together with all taxes and assessments that are liens thereon.'' The contention is that this requires the taxes to be paid within ten days as well as the $200 per lot. But this is not the necessary meaning of the language quoted. Moreover, the moving papers show that this was not the meaning of the resolution and that it was not intended to require the payment of the taxes within the ten days mentioned. The relator did pay the money at the rate of $200 a lot within the ten days but did not pay the taxes and assessments until the release had been prepared and approved and sent to the mayor for execution. This was after the ten-day period had passed. But the fact, as shown, is that the city authorities have adopted the policy under other resolutions of the sinking fund substantially similar to the one in question of not requiring taxes to be paid until the release was about to be delivered. And the resolutions and communications forming a part of the moving papers show that there was no intention to require the payment of the taxes within the ten days and that they were to be paid when the release was delivered. The history of this resolution supports the relator's contention. The relator had been trying to settle the matter with the city for some time and earlier resolutions or offers to settle had been adopted

by the sinking fund commissioners. These earlier resolutions did not require the payment of the taxes contemporaneously with the payment of the $200 per lot and made it plain that the date of the delivery of the release was to govern as to when the taxes were to be paid. They did this by explicitly providing first, for the payment of the lot consideration within a fixed time, and then directing that the release was " not to be delivered until all taxes and assessments which are liens upon the premises to be released have been paid or discharged.'' The subsequent resolutions, including the one in·question, were not adopted because of any disagreement as to the time when the taxes should be paid but because of some other disputes which are definitely pointed out in the official correspondence which is a part of this record. And it was to obviate those other disputes that the present resolution was recommended. The change in form in this ·particular was apparently not intended to require the payment of the taxes within the limited period. And there seems to have been good reason why their payment within that period should not be required by the city. This resolution was adopted April 14, 1921. If the taxes had to be paid within ten days from that date that would be before the first installment of the 1921 tax became payable and if the release was not ready for delivery until after May 1st the claimant would be under no obligations to pay the taxes that then became due or any assessments that might become payable after the ten-day period. It was to the interest of the city that all taxes and assessments should be paid up to the time that the release was delivered. And, as has been stated, this was the construction that was given to the resolution by the city officials who had to deal with it. Departmental interpretation

by usage always has great weight in construing a resolution or statute. Endlich Interp. Stat. § 360; *Easton v. Pickersgill*, 55 N. Y. 310. Apparently the comptroller and all others connected with the matter considered that the relator complied with the resolution in all respects, for the release was prepared and approved. And in fact the mayor did not give as a reason for refusing to sign it the fact that the relator was in default. There was no default by the relator. The only default was by the mayor. His duty it was to sign the release and as he has refused to do so, although requested, mandamus must issue. Motion granted, with fifty dollars costs.

Motion granted.