In the Matter of JOSEPH M. SCHANTZ et al., Petitioners, against GENESEE STATE PARK COMMISSION, Respondent.

Supreme Court, Special Term, Monroe County, February 15, 1952.

*Robert M. Schantz* for petitioners.

*Nathaniel L. Goldstein, Attorney-General (Philetus M. Chamberlain* of counsel), for respondent.

O'BRIEN, J. The petitioners are owners of real property in the subdivision known as Summer Haven, which is situate on the south shores of Lake Ontario, in the town of Hamlin, Monroe County. They have instituted this proceeding under article 78 of the Civil Practice Act, to review an appropriation made by the Genesee State Park Commission of a right of way or easement which would provide direct access to the Lake Ontario State Parkway from the subdivision in which petitioners reside. In the year 1935 the County of Monroe acquired by deed (Liber 1730 of Deeds, page 317, Monroe County Clerk's office) and in the year 1937 conveyed to the State of New York (Liber 1863 of Deeds, page 5, Monroe County Clerk's office) land lying immediately south of Summer Haven, for the construction of the Lake Ontario State Parkway, a parkway running from the city of Rochester westerly along the shore of Lake Ontario to Hamlin Beach Park. In these deeds there was reserved to the " grantors, their successors or assigns, a right of way and easement (for) a private driveway for any necessary traffic connecting the lands of the Grantors adjoining and on the north side of the premises * * * to be located where shown on the above mentioned map." Apparently construction of the part of the highway with which we are concerned was delayed until 1951. On August 2, 1951, the Genesee State Park Commission began appropriation proceedings under the Conservation Law, and appropriated the easement or right of way which had been reserved to the " grantors, their successors or assigns " in the two deeds above mentioned. It is to this appropriation the petitioners object and which they seek to have annulled in this proceeding.

While the petitioners asserted on oral argument and in their brief that the appropriation was made under section 59 of the Conservation Law, we have concluded that actually it was made under section 676-a of the same statute.

Section 59 contains authority for the *Conservation Department* to appropriate land in case it has been determined that such land " shall be necessary for public park purposes " (Conservation Law, § 59, subd. 1, par. [a]). Section 676-a of the same statute empowers a " Regional Park Commission " to acquire property by appropriation. That section begins (subd. 1, par. [a]): " Notwithstanding the provisions of any other section of this chapter, a regional park commission as defined in section six hundred and seventy two of this chapter may * * * acquire property for * * * parkways by appropriation in the manner provided in this section ". Section 672 provides, among other things, that for purposes of administration of various parks and parkways of the State, the State shall be divided into ten park regions. It further provides that the third park region shall consist of the counties of Orleans, Genesee, Monroe, Wyoming and Livingston. It also states that the jurisdiction and control of parkways in the third region shall be in the Genesee State Park Commission. Finally section 672-a of the Conservation Law provides that the Genesee State Park Commission shall have jurisdiction and control over the Lake Ontario State Parkway.

It is therefore a necessary conclusion that the Genesee State Park Commission is a regional park commission; that it has jurisdiction of the third region where this easement was located and that its power to make the appropriation now complained of is granted by section 676-a of the Conservation Law.

The petitioners do not question the constitutionality of the statutes involved, nor do they claim them to be illegal or invalid in any other respect. Nor is any claim made that the procedural requirements imposed by the subsequent portions of section 676-a of the Conservation Law have not been complied with. The petitioners contend that the State acquired the lands through the deeds above mentioned as the result of negotiation and dealing with the petitioners' predecessors in title, and that the State thereby made a bargain or contract, so petitioners claim, to accept the easement and reserve it to the grantors and their successors. For this reason, they urge, the State is precluded from appropriating it thereafter. Petitioners also claim that the easement runs with the land, the parkway purchased being the servient tenement, and the Summer Haven property being the dominant tenement, and finally that there was no necessity for such appropriation.

We have concluded that petitioners are not barred from maintaining this proceeding by the exceptions in section 1285 of the

Civil Practice Act. We have also concluded that the precise question which is now to be determined by Special Term is set out in subdivision 5 of section 1296 of the Civil Practice Act, viz.: " Whether in making the determination " (the appropriation complained of) " any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the petitioner ".

The appropriation here made by the State was under its power of eminent domain. In the case of *Matter of Bronx Chamber of Commerce* v. *Fullen* (174 Misc. 524) an application was made under article 78 to review orders of the transit commission by which the commission approved the condemnation and demolition of the Ninth Avenue Elevated properties from 155th Street to South Ferry. The petitioner in that case contended that the orders of the transit commission were " arbitrary, capricious, erroneous, illegal and void ". This contention was based on the claim that there were no adequate substitute facilities provided for the persons using the lines to be condemned. The court at pages 528–529 makes the following statement: " Eminent domain is one of the sovereign powers inherent in the State as sovereign to take private property for public use. * * * The only limitation upon the exercise of the power is that the use must be *public, compensation must be made,* and due process of law must be observed. * * * As the legislative branch alone may determine the necessity and prescribe the method and extent of the taking, it may also delegate the duty of determining necessity or expediency in the acquisition of private property to a tribunal of its creation or choice and the opinion arrived at and decision made are political and judicial. [ Citations omitted.] Whether the use for which the property is authorized to be taken is a public use is a judicial question, but *the question of the necessity of the taking for public use is exclusively a legislative one* and the Legislature has the right to designate officers, bodies or tribunals to determine exigency or necessity. The *decision of the Legislature or of its instrumentality is conclusive."* (Emphasis supplied.)

In *Rindge Co.* v. *Los Angeles* (262 U. S. 700, 705, 707, 708, 709, the United States Supreme Court states: " The nature of a use, whether public or private, is ultimately a judicial question. * * * Public uses are not limited, in the modern view, to matters of mere business necessity and ordinary convenience, but may extend to matters of public health, recreation and enjoyment. Thus, the condemnation of lands for public parks is now universally recognized as a taking for public use. * * *

And manifestly, in these days of general public travel in motor cars for health and recreation, such a highway as this, extending for more than twenty miles along the shores of the Pacific at the base of a range of mountains, must be regarded as a public use. * * * · The *necessity for appropriating private property for public use is not a judicial question.* This power resides in the legislature, and may either be exercised by the legislature or delegated by it to public officers.'' (Emphasis supplied.) (See, also, to the same effect as to the necessity of taking, *Bragg* v. *Weaver,* 251 U. S. 57, 58, and *Joslin Co.* v. *Providence,* 262 U. S. 668, 678.)

ꞏ It thus appears that the exercise of the power of eminent domain is legislative only, not reviewable by the courts, provided that the use is public, compensation must be made and due process of law must be observed.

Petitioners raise no question about the provision for their right to compensation which is concededly available to them, nor do they deny that the use of the appropriated property is public. They stoutly contend that no necessity exists for such taking. However, this objection does not pose a judicial question, but one for the Legislature and the commission to which it has delegated power under section 676-a of the Conservation Law to determine. In view of the fact that the regional park commission had unquestioned authority to appropriate all the land if it wished, there can be little question of its power to appropriate a part of the whole, viz.: the easement. Under these circumstances the contention of the petitioners that under the substantive law of real property, the parkway remains a servient tenement to the property of the purchasers, cannot be sustained.

In support of their argument that the State is bound by a contract allegedly made by the County of Monroe in negotiations by which it secured the deed in Liber 1730 of Deeds at page 317, from the predecessor in title of the purchasers, and that the State is estopped from making the appropriation by reason of such contract, the petitioners cite *Bergen Beach Land Corp.* v. *City of New York* (108 Misc. 70, affd. 192 App. Div. 884). In that case the predecessors of the plaintiff owned lands under water near Jamaica Beach in the city of Brooklyn. With the sinking fund commissioners of the city, they negotiated an agreement by which a dispute between them as to their boundary lines was resolved and which required the city to establish harbor lines and to dredge the channel. No written contract was signed but the commissioners of the city by resolution approved the arrangement. An action was commenced by the plaintiff to

enforce the understanding and arrangement. On a motion for a preliminary injunction the court stated that the city had no right to repudiate its agreement and should be held to its contract. It will be noted that this holding was on a motion, only, in the action and also that no right of appropriation or other exercise of eminent domain was involved. It is no authority for petitioners' contention. Attention is directed also to the same case, *Bergen Beach Land Corp.* v. *City of New York* (113 Misc. 491) in which the court considered the plaintiff's prayer for specific performance of the contract referred to in the earlier opinion. There the court held that the plaintiff would be limited to an action for damages and that *specific performance would be denied,* the court holding '' that the establishing of harbor lines and the dredging of channels *is the exercise of a legislative power.* [citations omitted] It is similar to the laying out and opening of streets. [citations omitted] Being a legislative act it may be changed from time to time.'' (P. 496.) Similarly, in our case the right to appropriate all the land or simply the easement, which if unappropriated, would give petitioners direct access to the parkway at a point convenient to them, is a legislative act which is not subject to review by the courts. Similar to the establishing of harbor lines or the laying out of streets, the taking of land for public use is a legislative act with respect to which a legislative authority can change its mind.

The court is unable to sustain the petitioners' contention that either the State of New York or the Genesee State Park Commission is bound by the exception in the deeds referred to or by any contract or understanding which was made at that time.

An order may be entered denying the prayer of the petition, with $10 costs.

Settle order on two days' notice.