CHARLES E. DENTON, Respondent, *v.* EDWARD BENNETT, SR., and
Others, Appellants.

*Proof establishing that land under the waters of Jamaica bay had been claimed for
one hundred years by the town of Flatlands.*

What evidence establishes that land under the waters of Jamaica bay, which the
Commissioners of Fisheries, Game and Forest assumed to lease under section
197 of the Fisheries, Game and Forest Law (Laws of 1892, chap. 488, as amd.
by Laws of 1895, chaps. 395, 974, Laws of 1896, chap. 653), had been claimed
for upwards of one hundred years by the town of Flatlands under its colonial

patents, and that, consequently, by the terms of section 198 of the Fisheries, Game and Forest Law, as amended by chapter 453 of the Laws of 1898, the commissioners had no jurisdiction to execute the lease, considered.

Chapter 734 of the Laws of 1868 does not constitute a legislative disaffirmance of the claim of the town of Flatlands to the ownership and control of Flatlands or Jamaica bay under its colonial patents.

APPEAL by the defendants, Edward Bennett, Sr., and others, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Kings on the 1st day of May, 1903, upon the decision of the court, rendered after a trial at the Kings County Special Term, granting to the plaintiff an injunction restraining the defendants from taking shell fish from lot No. 341, Jamaica bay, Kings county, during the pendency of a lease of said lot granted by the Commissioners of Fisheries, Game and Forests of the State of New York on May 10, 1898.

*Robert Stewart*, for the appellants.

*Thomas Kelby* [*James W. Ridgway* with him on the brief], for the respondent.

WILLARD BARTLETT, J. :

The right of the plaintiff to maintain this action depends upon the validity of the lease of lot No. 341 in Jamaica bay, Kings county, made to Frank E. Dickens on May 10, 1898, by the Commissioners of Fisheries, Game and Forests, the plaintiff having acquired the original lessee's interest therein by virtue of mesne assignments.

In executing the lease the commissioners assumed to act under the provisions of section 197 of the Fisheries, Game and Forest Law (Laws of 1892, chap. 488, as amd. by Laws of 1895, chaps. 395, 974, and Laws of 1896, chap. 653).

Section 198 of the same general statute, however, as in force at the time of the execution of this lease, limited the powers conferred upon the commissioners by the preceding section by providing that it should not " apply to or affect lands under water owned, controlled or *claimed under colonial patents* or legislative grants by any town or person in the counties of Suffolk, Queens, Kings or Richmond." (See section as amended by Laws of 1898, chap. 453, taking effect on April 22, 1898.)

The leased lot in question consisted of land under water on

Canarsie Pol Bar in the body of water formerly known as Flatlands bay and now better known as Jamaica bay.

The learned trial judge held that there was no evidence in the case that the town of Flatlands (which was annexed to the city of Brooklyn by chapter 450 of the Laws of 1894) at any time claimed said lands under water either under colonial patent or by legislative grant.

I am unable to concur in this view. I think the proof shows repeated assertions of a claim under the colonial patents relating to the town, beginning in the eighteenth century and never disputed until a very recent date.

The extracts in the record from the official minutes of the town meetings of Flatlands contain abundant evidence of this claim. On April 15, 1790, the freeholders and inhabitants met " in order to make prudential rules, orders and regulations concerning fishing, fowling, oystering, clamming *and other benefits arising out of the bay laying within the patents of said town* " and resolved that every person not being an inhabitant " *going in the said bay* " with a batteau or other small craft for fishing should pay threepence a day to the trustees. On April 17, 1808, a town law was passed, the preamble of which recites that " *the practice of catching clams with rakes in the bays and deep waters within the patent of the town of Flatlands is found to be very destructive to the growth and increase of clams,*" and this recital is followed by a prohibition against taking clams with rakes " *in the bays and deep waters within the patent aforesaid.*" On the first Tuesday of April, 1810, the town meeting chose Gerret Wyckoff and Johannes Lott to be trustees of the bay of Flatlands. Other " Trustees of the Bay of the Town of Flatlands " were elected at the town meeting held on the first Tuesday of April, 1814, and it was ordained " that no person or persons shall be allowed to catch crabs with rakes or tongs *in the bays within the patent of the town of Flatlands.*" On August 24, 1816, a town law was enacted forbidding those not inhabitants from cutting or carrying away sedge " *on any marsh or meadow in the bay belonging to the town of Flatlands ;* " and on September 3, 1816, at a special town meeting, it was resolved that it should not thereafter be lawful " to catch or take clams, oysters or crabs with rakes or tongs *in the waters of the patent of said town.*"

The record contains further evidence to the same effect. In 1868

the Legislature passed an " act for the protection of the planting of oysters in the towns of Gravesend and Flatlands, Kings county," which declared that the inhabitants upon compliance with the terms of the statute might plant oysters under the public waters within their respective towns, but limited the extent of land under water so to be used by any one person to three acres and provided that the privilege should not be exercised without the written permit of the justice of the peace and the supervisor, who before granting such permit were required to exact satisfactory evidence that the premises were not a natural bed of oysters and were not already occupied or used. (Laws of 1868, chap. 734.) I do not construe this statute as a legislative disaffirmance of the claim of the town of Flatlands to the ownership and control of the bay of Flatlands under its colonial patents. On the contrary, it distinctly recognized the right of the town authorities to grant or withhold the privilege of planting oysters there; and this power they exercised until the annexation of the town to the city of Brooklyn under the act of 1894. It is true that Mr. Justice PRATT, writing for the General Term of this department in the case of *People* v. *Thompson* (30 Hun, 457), which was a criminal prosecution under the act of 1868, did say: " It is not pretended that the town of Flatlands ever obtained any exclusive right to the fisheries within the waters which lie within its territories. There was no evidence of any grant to the town and no presumptive right is claimed in its behalf." But this language has no application to the case at bar, where the contentions and claims of the parties as well as the proofs are radically different; nor does it support the assertion of the respondent that at that time the town made no pretension of ownership to these lands under water — for the town was not in any sense a party to the proceeding and was not and could not have been heard therein.

The evidence having demonstrated the existence of a claim at least 100 years old, in behalf of the town based upon its colonial patents and practically undisputed, I think there should have been judgment for the defendants upon the ground of want of statutory power in the Commissioners of Fisheries, Game and Forests to grant the lease upon which the plaintiff's title rests.

The appellants ask us to go further and determine that upon the evidence in the record before us not only the town's claim but the

SECOND DEPARTMENT, MARCH, 1905.          [Vol. 102.

town's actual ownership of these lands under water was established by the colonial patents and the proof of possession and user thereunder. In the view which has been taken it is not necessary to decide that question upon this appeal. In the very careful consideration which I have been obliged to give to the case in all its aspects I have found indications of the existence of evidence not contained in this record (such as old maps and the like) bearing upon this question of ownership, and should the issue arise again in any other litigation it is probable that fuller and more satisfactory proofs may be presented rendering its solution less difficult.

In the present case, as there is a fatal objection to the plaintiff's right to maintain the action, which cannot be obviated upon a new trial, the order of reversal should direct that the complaint be dismissed.

HIRSCHBERG, P. J., WOODWARD and JENKS, JJ., concurred; HOOKER, J., not voting.

Judgment reversed and new trial granted, costs to abide the final award of costs.