In the Matter of the CITY OF NEW YORK, Respondent, Relative to Acquiring Title to Real Property Along the Shore of Jamaica Bay in the Boroughs of Brooklyn and Queens.

WILLIAM ARMBRUSTER et al., Appellants.

(Argued May 11, 1931; decided June 2, 1931.)

*Ralph L. Baldwin* for William Armbruster et al., appellants. Riparian rights acquired by the city of New York for purposes other than in aid of navigation and commerce must be compensated for. (*Matter of City of New York* [*Speedway*], 168 N. Y. 134; *Sage* v. *Mayor*, 154 N. Y. 61; *Matter of City of N. Y.* [*West 205th St.*], 240 N. Y. 68.)

*Charles J. Nehrbas, Hamilton Anderson* and *William R. Rust* for Harry A. Hanbury et al., appellants. The improvement undertaken by the city of New York is not of the character permitted under its general right to improve waterways for the benefit of navigation. (*Sage* v. *Mayor*, 154 N. Y. 61; *Egerer* v. *New York Central*

R. R. Co., 130 N. Y. 108; *Reis* v. *City of New York*, 188 N. Y. 58; *Prosser* v. *Northern Pacific R. R. Co.*, 152 U. S. 59; *Appleby* v. *City of New York*, 271 U. S. 364; *Vilias* v. *Featherson*, 94 App. Div. 259; *Matter of City of New York*, 168 N. Y. 134.)

*Francis P. O'Connor* and *Edward W. Murphy* for John Mocilar et al., appellants. The improvement undertaken by the city of New York, particularly as to lands lying north of the marginal street was not in its governmental but in its proprietary capacity. (*Matter of City of New York*, 168 N. Y. 134; *Sage* v. *Mayor*, 154 N. Y. 61; *Stuart* v. *Palmer*, 74 N. Y. 183; *Hathorn* v. *National Carbonic Gas Co.*, 194 N. Y. 326; *Matter of Rapid Transit Railroad Commrs.*, 197 N. Y. 81.)

*Arthur J. W. Hilly*, Corporation Counsel (*Willard S. Allen, J. Joseph Lilly, Josiah A. Stover* and *Joseph F. Mulqueen, Jr.*, of counsel), for respondent. Claimants whose property has not been acquired by the city are entitled to no damages for loss of alleged riparian rights. (*Sage* v. *Mayor*, 154 N. Y. 61; *Greenleaf Johnson Lumber Co.* v. *Garrison*, 237 U. S. 251; *Montgomery* v. *Portland*, 190 U. S. 89; *Bergen Beach Land Corp.* v. *City of New York*, 113 Misc. Rep. 491; *McCarthy* v. *Mills*, 214 App. Div. 70; *Vilias* v. *Featherston*, 94 App. Div. 259; *Swindell* v. *New York & Cuban S. S. Co.*, 98 Misc. Rep. 350; *Interborough R. T. Co.* v. *City of New York*, 172 App. Div. 230; *Matter of City of New York* [*West 205th St.*], 211 App. Div. 33; 240 N. Y. 68; *Matter of City of New York*, 168 N. Y. 134; *Lansing* v. *Smith*, 4 Wend. 9; *Frazee Milling Co.* v. *State of New York*, 122 Misc. Rep. 545; *Thompson* v. *State of New York*, 204 App. Div. 684; *Burns Bros.* v. *City of New York*, 178 App. Div. 615; 232 N. Y. 523; *Stegmeyer* v. *State of New York*, 117 Misc. Rep. 626; 204 App. Div. 858; *Scranton* v. *Wheeler*, 179 U. S. 141; *Gibson* v. *United States*, 166 U. S. 269; *Marine Ry. & Coal Co.* v. *United States*, 265 Fed. Rep. 437; 257

U. S. 47; *Dalton Sons Co.* v. *City of Oakland,* 116 Cal. 463; *Holyoke Water Power Co.* v. *Connecticut River Co.,* 52 Conn. 570; *Transportation Co.* v. *Chicago,* 99 U. S. 635; *Winifred Coal Co.* v. *Central R. R. & Bridge Co.,* 24 Ohio L. J. 173.)

CRANE, J.   The city of New York by this proceeding instituted in 1924 has acquired title to lands, land under water and riparian rights for the improvement of the waterfront and the establishment of a marginal street or wharf on the northerly shore of Jamaica bay in the boroughs of Brooklyn and Queens.   The plan as made and filed by the Commissioner of Docks in 1921 extends this marginal street or wharf for a distance of about seven miles.   Along this north shore at Jamaica bay are marshlands and creeks, inlets and waterways.   Many of these are closed or to be closed entirely by the establishment of this wharf improvement.

Title to the lands under the water of Jamaica bay was vested in the State of New York as successor to the English crown.   By virtue of chapter 568 of the Laws of 1909 the title passed, as hereinafter stated, from the State to the city of New York.   Title to all the creeks, harbors and havens and marshes within the limits of the old town of Jamaica by virtue of Colonial patents and by various consolidations vested in the city of New York by the Greater New York Charter (Laws of 1897, ch. 378). All the land under water was at the time of this proceeding owned by the city of New York.

Chapter 568 of the Laws of 1909, entitled "An act to grant to the city of New York certain lands under water. in Jamaica bay and vicinity," provided:

" SECTION 1.   To the end that the city of New York may cooperate with the federal government in the creation of a new harbor in and about Jamaica bay, including the making of channels, basins, slips and other necessary adjuncts, through the excavation of the soil or lands

under water, and otherwise, intended for the advancement of the commercial interests of the city, state and nation, there is hereby granted for the purposes specified in this act, to the city of New York such right, title and interest as the state of New York may have in and to the land under water in Jamaica bay and Rockaway inlet and the tributaries thereto which lie to the northward of latitude forty degrees thirty-three minutes north, and to the eastward of longitude seventy-three degrees fifty-six minutes west, as now interpreted, excluding, however, all lands under water included within the boundary of Nassau county. This grant shall become operative upon the United States government making its first appropriation for the creation of the new harbor mentioned in this act, or upon the city of New York appropriating and setting aside a sum not less than one million dollars for the same purpose."

This act was amended by chapter 636 of the Laws of 1925 by adding sections 2-a and 2-b, reading as follows:

" § 2-a. The commissioners of the land office of the state of New York are hereby authorized and empowered, in their discretion, upon the application of the commissioners of the sinking fund of the city of New York, and upon such terms as may be agreed upon with such commissioners, to grant and convey to the city of New York by proper instrument or instruments in writing, all the right, title and interest of the people of the state of New York, not heretofore granted, in and to so much of the lands under water in Jamaica bay and its tributaries as are situated in-shore of the interior line of the proposed marginal street, wharf or place as laid down on the plan for the improvement of the waterfront of the city of New York on Jamaica bay, determined upon by the commissioner of docks of said city on the seventh day of October, nineteen hundred and twenty-one and adopted by the commissioners of the sinking fund of said city on the fifth day of January, nineteen hundred and twenty-

two, and as may be laid down on any amendment to said plan hereinafter duly made, except such of said lands under water as lie within the lines of the proposed basins as laid down on said plan.

"§ 2-b. The city of New York, acting by the commissioners of the sinking fund of such city, is hereby authorized and empowered to grant and convey, upon such terms and conditions and for such consideration as they may deem proper, by proper instrument or instruments in writing, under the corporate seal of said city, all the property, right, title and interest that it, the city of New York, now has or may hereafter acquire in and to the lands under water in Jamaica bay and its tributaries described in section two-a hereof and situated within the limits and bounds therein defined."

All the lands under water, therefore, up to high-water mark involved in this proceeding were owned by the city of New York. The marginal street or wharf as planned is to be of considerable size and extent not only in length, but in width. Seventeen hundred feet is given as the width of the wharf extending along the shore for a distance of about seven miles.

The rights of the city in the wharf or marginal street when constructed are stated in section 819-a of the Greater New York Charter (Laws of 1920, ch. 809), reading:

"It shall be lawful for the commissioner of docks, with the approval of the commissioners of the sinking fund to erect and maintain within the lines of and upon any marginal wharf, street or place now constructed or which may hereafter be constructed sheds, warehouses, coal pockets and other buildings and structures devoted to commercial uses in connection with the adjacent piers and bulkheads * * *. With the approval of the commissioners of the sinking fund it shall also be lawful for the commissioner of docks to lease any portion of any such marginal wharf, street or place * * * and

to authorize the lessee under any such lease to erect and maintain upon the premises so demised sheds, warehouses, coal pockets or other buildings or structures devoted to commercial uses in connection with the adjacent piers and bulkheads."

The extent to which this condemned property may be used under the appellation of a " marginal street or wharf " may be gathered from chapter 515 of the Laws of 1930, providing in section 2 as follows:

" The city of New York is hereby authorized to lease, in the manner provided in the Greater New York Charter, so much of the lands under water, islands, hummocks, hassocks, marshes and meadow lands herein or heretofore granted, as lie within the lines of any marginal street, wharf or place now adopted or which may hereafter be adopted, for the purposes of establishing and creating commercial, industrial and manufacturing plants, adjuncts and facilities necessary thereto."

Section 3 of this act authorizes the city to use the lands not acquired for marginal wharves for street or park purposes; and section 4 authorizes the city to lease for residential use lands not included within the limits of the marginal wharf.

That part of the condemnation before us at the present time is designated as " Parcel 10," and includes that portion of the property to be taken for the marginal street or wharf running west to Spring creek basin. The pierhead and bulkhead lines of this basin, approved by the Secretary of War, May 8, 1916, formed the westerly terminus of the marginal street at this point. Spring creek is to be kept open, according to these pierhead lines, extending north at a uniform width past the property sought to be condemned. No question arises in this proceeding as to the right of the city to build this marginal street or wharf 1,700 feet wide running east and west on the northerly shore of Jamaica bay. Whatever upland is taken has been condemned and will be

paid for; the land under water belongs to the city of New York. So far as creeks, kills and waterways are crossed and closed by this marginal street the adjoining property owners have suffered no damage. (*Black River Improvement Co.* v. *La Crosse Booming & Transportation Co.*, 54 Wis. 659.) Whatever riparian rights are interfered with, obstructed or destroyed by this improvement for commerce and navigation, no claim for compensation therefor can be sustained; the riparian rights of the adjoining owners were held subject to this sovereign right of improvement for such a purpose. (*Sage* v. *Mayor*, 154 N. Y. 61.)

Another and a different question arises regarding riparian rights not taken or interfered with by the construction of the marginal street and wharf itself, and due entirely to the act of the city in filling in its land to the north of the street, and to the east of Spring creek basin. Spring creek runs north from Jamaica bay and to the west of the marginal street or wharf. There will be 1,700 feet or more of this marginal street to the east of Spring creek. But as presently existing, Spring creek widens out into what is known as Mill creek north of the marginal street and to a considerable distance to the east along the northerly edge of the marginal street. After the construction of the wharf the property owners within parcel 10 to the north of the wharf will have access from their property to Mill creek or Spring creek. There is a large body of water at this place between the upland and the bulkhead line of Spring creek basin. These property owners have riparian rights in this waterway. They can pass from their upland by boats into Spring creek basin or Mill creek south past the westerly end of the wharf and into Jamaica bay. In other words, the marginal wharf at its westerly end is surrounded on three sides by water. This north side the city intends to fill in up to the bulkhead line of Spring creek, and the question arises whether in so doing the city must pay

for the riparian rights destroyed. If it be done in the interest of commerce and navigation as part of the marginal street wharf improvement the upland owners have suffered no damage; if the city has recognized these riparian rights and by this proceeding has condemned them for its own street improvements then it should pay for the rights thus taken. In other words, every improvement by a city along the margin of its waterways is not necessarily by reason of its location in the interest of commerce and navigation. (*Matter of City of New York*, 168 N. Y. 134.) In connection with the building of a dock or a wharf or a marginal street in the interest of commerce and navigation I take it that the city may also combine other street improvements which will be of a public nature and in the interest of the municipality but which may not necessarily be an exercise of the sovereign reserve power over waterways. In other words, if a city determines to fill in land owned by it between the upland and bulkhead or pier line and create city streets and sell the property between the streets for private purposes, it would not necessarily be an improvement in the interests of commerce and navigation. Under such circumstances the city should pay for taking of the upland owners' riparian rights. Such seems to be the intimation of this court in *Sage* v. *Mayor* (*supra*, p. 76), wherein it was said: " There is no evidence in this case that the corporation intended to use any part of the lands in question for its private advantage, or for any purpose except to aid the commerce of a great city, and it was admitted by the learned counsel for the corporation in his argument of this appeal that the defendants could not lawfully use these lands except for commercial purposes."

We have no statement in the petition and in the proceedings following it as to the purpose for the filling in of the lands north of the marginal street and between the upland and the bulkhead line of Spring creek basin. Here for quite a distance the shore of the upland and the

bulkhead line run north almost parallel with a body of water between them. The resolution of the Board of Estimate permitting and authorizing these proceedings directed the city to condemn any riparian rights necessary and not owned by it. So far as the marginal street or wharf itself shut off riparian rights no damage was sustained; the riparian rights were not taken as they by nature were subject to the sovereign right of improvement for commerce and navigation. (*Scranton* v. *Wheeler*, 179 U. S. 141.) Whether the city were in doubt regarding the riparian rights in front of the property to the north of the marginal street we do not know, but we have it in the record that the city attempted to condemn these property rights and has done so. Whatever doubt existed has been exercised in favor of the property owner. From the lines upon one of the exhibits in the case it looks as if the city intended at some time to open streets and avenues through this filled-in land. The proceedings do not state; neither have any maps been filed showing such street openings. We may assume, however, that after the land is filled in north of the marginal street and between the upland on the east and the bulkhead line of the basin on the west the city will open streets and sell the property. It has been authorized so to do by the acts of the Legislature, above quoted. This to my mind is for a public improvement but not a part of the improvement for commerce and navigation. This is a city purpose, one for its own benefit, to accomplish which it should compensate the upland owners whose riparian rights are taken. Some courts have taken a different view (*Home for Aged Women* v. *Commonwealth*, 202 Mass. 422, p. 435; *Marine Ry. & Coal Co.* v. *United States*, 265 Fed. Rep. 437), but this ruling is in line with our own authorities.

For these reasons the order as to the owners having riparian rights on Spring creek or Mill creek basin north of the marginal street must be reversed, and the matter

remitted to the court to determine whether the appropriation of such rights was incidental to the construction and usefulness of the marginal street and if not so incidental for the award of damages if any, wherever such rights have been appropriated.

The order should be modified as stated in this opinion and as modified affirmed, without costs.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Ordered accordingly.