In the Matter of the Application of THE CITY OF NEW YORK, Acting by and Through the Commissioner of Docks, Relative to Acquiring Right and Title to and Possession of Certain Real Property, Lands, Lands under Water and Lands under Water Filled in, Not Now Owned by the City of New York, Situated Along the Westerly and Northerly Shores of Jamaica Bay, in the Borough of Brooklyn, in the City of New York, at Bergen Beach and Adjacent to Paerdegat Basin and Lying between East Mill Basin and Paerdegat Avenue, North, Together with All Riparian and Incorporeal Rights, Not Now Owned by the City of New York Appurtenant of and to Said Lands, and Lands under Water Filled in and Uplands, for the Construction of a Marginal Street, Wharf or Place Thereon, Pursuant to Plans Heretofore Determined upon by the Commissioner of Docks and Approved by the Commissioners of the Sinking Fund.

WARREN LESLIE and Others, Appellants; THE CITY OF NEW YORK, Respondent; ARTHUR J. W. HILLY, Intervenor.

Second Department, May 1, 1936.

*John W. Davis* [*Daniel J. Kenefick* and *Luke W. Finlay* with him on the brief], for the appellant Warren Leslie and others.

*Francis S. Bensel* and *David Barnett* [*W. F. Knecht* with them on the brief], for the appellants Central Hanover Bank and Trust Company and Manufacturers Trust Company.

*Paul Windels, Corporation Counsel* [*Philip W. Haberman, Jr., Milton I. Newman* and *Philip L. Wellens* with him on the brief], for the respondent.

PER CURIAM. There are two valid reasons why the order from which the appeal is taken should be affirmed, in the manner hereinafter indicated:

(1) The title to the lands under water, part of premises for which an award was made to claimant, was involved in very serious doubt at the time of the commencement of the proceeding:

(a) Was the title in the town of Flatlands, the predecessor of the city of New York, as held by BLACKMAR, J., at a Trial Part and confirmed by CARR, J., in the opinion in *Dickens* v. *City of New York* (175 App. Div. 568); as strongly suggested by WILLARD BARTLETT, J., in *Denton* v. *Bennett* (102 App. Div. 454); as indicated by a dictum of FAWCETT, J., in *Matter of City of New York (Gerritsen Basin-Marine Park)* (N. Y. L. J. July 16, 1932, p. 199); and as further indicated by chapter 283 of the Laws of 1879, authorizing the town of Flatlands to convey certain lands in Jamaica bay?

(b) Was the title to the lands under water in the upland owner, as it is claimed it is indicated in another and different grant to the town of Jamaica (*Rockaway Park Imp. Co.* v. *City of New York, No. 2*, 140 App. Div. 160); a finding (not essential to the determination), per CROPSEY, J., in *Bergen Beach Land Corp.* v. *City of N. Y.* (113 Misc. 491); dictum of CRANE, J., in *Matter of*

*City of New York (Jamaica Bay)* (256 N. Y. 382); admissions in pleadings in *People of State of New York* v. *Williams, Adams* (predecessors in title of claimant) and *City of New York*, Kings County Supreme Court (not reported), the judgment therein entered January 11, 1917, not being a binding adjudication of title; chapter 568 of the Laws of 1909, and chapter 522 of the Laws of 1912, in which the State of New York conveys all its right, title and interest to lands under water in Jamaica bay?

Undoubtedly there must be other documents, maps and statutes which would be of assistance in determining who was vested with title.

An award of $2,569,909 was made for the entire tract. No specific amount was allocated to the lands under water, but the proof indicates that it was undoubtedly a very substantial sum.

Despite the serious doubt involved in the title to the lands under water, and the large amount of money involved, the court's attention was not called to the cloudy status of the title. Proof of title began with the conveyance to claimant's predecessors in title in 1893, and included a grant of lands under water by the State to claimant's predecessors. The representatives of the city offered no proof and made no argument to support the claim of title in the city. None of the Colonial patents, which are the sources of title, were presented for consideration. So far as the record shows, none of the authorities were called to the attention of the court. Despite the fact there is one case squarely holding that title to the lands under water was in the town of Flatlands, the predecessor of the city, and others tending to show the same, and that there is no authority to the contrary, although some tend so to indicate, the city's representative must have assumed the title was not in the city. The city's claim to title was worthy of serious consideration, and title of the upland owner should have been disputed, so that the issue might be determined as provided in section 1000 of the Greater New York Charter. In view of the fact that there is a large amount of public money involved, the serious doubt as to this title should be removed. In the interests of substantial justice there should be a new trial.

(2) On February 1, 1926, claimant acquired title for the sum of approximately $1,025,000. The entire tract consisted of about one hundred and three acres of upland and fifty-six acres of land under water. On or about April 7, 1926, and May 12, 1926, seventy-six acres of upland were sold for $700,000, leaving a cost to claimant for the remaining twenty-seven acres of upland and the adjacent fifty-six acres of land under water of $325,000. On April 10, 1926, the commissioner of docks requested that the property be acquired

and then represented that the entire tract and other properties were assessed at $278,000. On September 30, 1926, the board of estimate adopted a resolution for condemnation, and on December 9, 1926, an order was made which vested the title in the city of New York. On January 19, 1927, less than one year after claimant had acquired title, proof of title was taken before the corporation counsel. Final decree was signed on December 23, 1932, making an award of of $2,569,909 as against a cost of $325,000.

The testimony of the experts for the claimant as to value was, for the entire tract, $5,386,314 by one, and $5,431,282 by another. Three city experts testified that the value of the entire tract was $810,379. The lands under water measured 2,445,550 square feet. The claimant's experts testified that the lands under water were valued at $1.35 a square foot, or a total of $3,301,492.50. The city's experts, on the other hand, testified that the land under water was practically worthless, and estimated its value at five cents a square foot, or $122,277.50. The difference as to value of the land under water between the claimant's experts on the one side and the city's experts on the other was almost $3,200,000. It will be readily understood that anything that had a bearing in this connection would be very important indeed.

In a statement verified by the secretary of the claimant in September, 1929, after proof of title had been taken, but before the hearings as to value had commenced in the condemnation proceedings, the claimant made a protest against the income tax levied by the Federal government on the profit made by it on the sale in 1926 of part of the upland for $700,000. The government claimed a certain amount for additional taxes other than that reported. In this protest the claimant asserts that the net profit on the sale was much less than that charged by the government. The protest recites that in February, 1926, the claimant purchased a tract of land at Bergen Beach with an investment cost of $1,032,447.50; that in April and May of 1926 there were sold parts of the tract, which had been plotted into lots prior to the original purchase, amounting to $700,000. The following is contained in the protest: "The statement in the report that 'the taxpayer is claiming this (the part still held) is more valuable than the property sold' — is also erroneous, in that it refers to the present time when the property is under condemnation to the city of New York. At the time of purchase, no such condition existed and the property was purchased with a cloud on the title and was in part from 8 to 15 feet under water, a fact that was used to reduce its value to prospective buyers, on the claim it would cost so much to fill in to be useable, that original value was very much of a question. If subsequent events have

enhanced the value, it can hardly be taken as effective before such events occurred and which are still dependent on clearing the title, which matter is still at issue in law and if decided against the corporation will make such holdings as they have, which are under water, practically valueless."

Thus to the Federal government it was urged that the property was purchased with a cloud on the title and was in part from eight to fifteen feet under water, which was used to reduce its value to prospective buyers, on the claim that, to be usable, it would cost so much to fill in that original value was very much a question. This was quite in accord with the views of the experts for the city, that the land under water was practically valueless. Of course, a statement made by the owner of property before a tax tribunal where he is seeking to reduce his assessment, would not be conclusive against him in a condemnation proceeding. Some allowance must be made for a tendency to assert the minimum of value in a place where it is of interest so to do, and to assert the maximum in another forum where it is helpful so to do. Nevertheless, this letter would undoubtedly have had considerable weight with the trial court, especially where such a tremendous difference in valuation was placed upon the property by the experts. This letter not only tends to discredit the experts for the claimant, but supports the testimony of the experts for the city. If an owner in one place decries the value of his property, he should not find fault if his depreciation of the value there be given consideration in another forum, where he attempts to exaggerate. (*Mevius* v. *Tiffin Products, Inc., No. 2,* 198 App. Div. 812; *Jordan* v. *Volkenning,* 72 N. Y. 300.) This protest is newly-discovered evidence which was not made available to the city until a long time after the determination and was duly and timely presented to the court.

The assignees of parts of the awards have no greater rights than their assignor.

The order entered April 26, 1935, as resettled by an order entered on or about June 11, 1935, granting the motion to vacate the decree and directing a new trial, should be modified by eliminating all the provisions thereof except the preliminary recitals and except the direction for a new trial, which is to be had pursuant to the provisions of section 1000 of the Greater New York Charter, and as so modified affirmed, with costs to abide the event.

LAZANSKY, P. J., YOUNG and HAGARTY, JJ., concur; CARSWELL and JOHNSTON, JJ., dissent and vote for reversal, with memorandum.

CARSWELL and JOHNSTON, JJ. (dissenting). The prevailing opinion, as we do, disregards the unusual procedure of the city on

this motion, and the assertions of intrinsic or extrinsic fraud. With the limitation thus implicit, we pass to questions of law. (*Matter of Baltimore Mail S. S. Co.* v. *Fawcett*, 269 N. Y. 379, 382, 383.)

One question is the quantum of the award so far as it relates to land under water. The title and award for upland are not here involved.

(1) The vacatur of a decree after the time to appeal therefrom has expired is not controlled by principles applicable to an appeal from a judgment, and those principles may not be invoked on a motion to set aside such a decree on the grounds here considered. On this belated motion for a new trial, as hereinbefore limited, the quantum of an award may not be reviewed on this record. We, therefore, deem irrelevant the discussion in the prevailing opinion of the quantum of the award. That discussion does not purport to be a complete recital of figures. It makes no mention of pertinent *bona fide* sales and gives no force to other pertinent factors set out in the record which would account for or materially narrow the gap between alleged cost of the property and the amount of the award therefor. It is not a full perspective of the situation before the trial justice.

The cited item of newly-discovered evidence was not presented under circumstances of required diligence. It, with impeaching effect, is merely cumulative of the similar and more extreme evidence presented on the trial by the city to establish a low basis of value. A new trial is not permissible merely to adduce cumulative evidence which would not affect the result. The trier of the fact herein, to whom this matter never has been submitted and who had this other extreme evidence before him, would presumably so conclude. The reason for the rule, which should be given vigor here, is that there must be finality to litigation. This proceeding concluded with the entry of a final decree on December 27, 1932, nearly three and a half years ago, and on that date it had been pending for six years. In the meantime, rights have vested in the appealing banks, which have made substantial advances in justifiable reliance upon that finality. This narrows inquiry to a question of law relating to title to land under water.

(2) When this proceeding was tried, whether or not claimant's title should be questioned was a matter for determination by the city when proof of title was made in due course under section 1000 of the Greater New York Charter. The city, acting through a group of lawyers of integrity and ability, specialists in this field, concluded that the claimants on such proof had established their title and, therefore, the only proper subject of contest was the

quantum of the award. The city knew, *inter alia*, the early dicta which indicated a possibility that it had title to the land under water, and it also knew the later dicta and actual decisions that the city did not have title. So informed, the city had a right to conclude that it did not have title to the land under water and that the claimants had established title thereto. The city had a right to recognize that if the doctrine of *res adjudicata* did not bind it, the doctrine of *stare decisis* did — this because of the judgment in *People of State of New York* v. *Williams, Adams*, and *City of New York*, Kings County Supreme Court (not reported), entered January 11, 1917 (an action instituted by the State to which the city was a party), holding that the 1897 State grant to Williams and Adams established title in the claimants; the judgment in *Atlantic, Gulf & Pacific Company* v. *City of New York*, Kings County Special Term of the Supreme Court for Trials (not reported), entered December 30, 1920, relating to land under water immediately adjoining the parcel here involved; the judgment in *Bergen Beach Land Corp.* v. *City of N. Y.* (113 Misc. 491); the views expressed in *Matter of City of New York (Jamaica Bay)* (256 N. Y. 382), per CRANE, J.; the obtaining by the city of grants from the State in 1913 of such similar land under water as had not been previously alienated to others (*e. g.*, to Williams and Adams in 1897); all of which were in accord with *Rockaway Park Imp. Co.* v. *City of New York, No. 2* (140 App. Div. 160).

To prevail on this motion it was an indispensable prerequisite that the city show affirmatively that it had title to the land under water involved in this award. It has not done so and makes no claim that it has done so.

If we disregard this essential to the city's prevailing as a matter of law under the circumstances, because afterborn wisdom or uninformed judgment deems that the question of title to the land under water should have been made the subject of another adjudication in this proceeding, then the only vacatur justifiable on this record would be a limited form of vacatur of the judgment as to whom the award was made: That is, in the exercise of plenary power, imposing a condition that the claimant consent to the award's being made to an " unknown owner " and further consenting to proceed forthwith to a trial of the question of title in a separate proceeding to obtain the award thus made to an unknown owner, or proceed in the present proceeding to a trial of the question of title. Nothing in section 1000 of the Greater New York Charter obstructs either procedure. This would determine, despite decisions to the contrary, whether the present belated intimation that the city might possibly establish that it and not the claimants had title to the land

under water, has substance or is a synthetic apparition. Apportionment of the award presents no difficulty. The court could do what has been done in proceedings to obtain awards to unknown owners — determine how much thereof belongs to one or more particular claimants where it be found that one claimant is entitled to one portion of such an award and another claimant entitled to another portion. Division may readily be made on expert opinion evidence based on the total value already decreed in accordance with orderly practice, where there was a real and vigorous contest relating to units of value.

However, since a majority vote is not available to sustain such a proposed intermediate disposition based on expediency, although a violation of established rules governing such motions but representing a minimum infraction thereof, to the end that another opportunity be given to have this question of title made the subject of a trial, we return to the view that the city has failed to establish the indispensable prerequisite to prevailing on this motion that it has title to the land under water which is part of this award. On the contrary, it appears that the claimant has title; hence the order should be reversed and the motion denied.

Order, as resettled, granting motion to vacate the decree and directing a new trial, modified by eliminating all the provisions thereof except the preliminary recitals and except the direction for a new trial, which is to be had pursuant to the provisions of section 1000 of the Greater New York Charter. As so modified, the order is affirmed, with costs to abide the event.