William C. Hecht, Jr., J.
This is a proceeding in eminent domain to acquire title in fee simple absolute to certain real property required for the Lincoln Square Slum Clearance Project bounded generally by.West 60th Street, Amsterdam Avenue, West 66th Street, lands of the New York Central Railroad, West 70tli Street, Amsterdam Avenue, West 66th Street and Columbus Avenue, excluding all streets, in the Borough of Manhattan, City of New York.
The buildings involved in this proceeding consist of tenement houses, apartment houses, rooming houses, commercial buildings of various types and sizes, churches, convents and public buildings of various types.
The trial extended over a period of several months. In compliance with the statutory requirement, the court viewed the properties on several occasions.
After considering all the evidence and after due deliberation, the court fixes awards as follows:
Damage Parcel Land Improvements Total
214...................... ....... 813,680 $7,820 $21,500
226-227.................. ....... 201,500 886,000 1,087,500
232...................... ....... 465,000 225,000 690,000
272...................... ....... 105,000 713,000 818,000
273...................... ....... 88,000 300,000 388,000
274...................... ....... 35,200 163,800 199,000
275...................... ....... 16,000 85,000 101,000
322...................... ....... 142,700 86,000 228,700
323 and 359.............. ....... 109,000 525,000 634,000
356...................... ....... 75,000 230,000 305,000
357...................... ....... 37,500 127,500 165,000
360...................... ....... 37,500 127,500 165,000
412...................... ....... 50,000 244,000 294,000
424...................... ....... 95,000 122,000 217,000
454-455.................. ....... 73,000 292,000 365,000
456...................... ....... 95,700 474,300 570,000
463..................... ....... 60,500 25,000 85,500
464...................... ....... 162,515 1,460 163,975
465...................... ....... 105,000 206,000 311,000
476...................... ....... 150,000 390,000 540,000
477...................... ....... 333,925 1,301,000 1,634,925
478-479-487.............. ....... 135,000 160,000 295,000
488 to 491 incl............ ....... 66,000 2,500 68,500
492...................... ....... 15,000 400 15,400
493-494-495.............. ....... 90,000 1,500 91,500
496 and 514.............. ....... 106,000 501,000 607,000
503...................... ....... 115,000 275,000 390,000
*262 Damage Parcel No. 110
I find the value of the subject property as of February 28, 1958 to be:
Land Improvements Total
$567,000 $1,836,000 $2,403,000
This compares with the following assessed valuations for each of the three years preceding the date of the petition:
Owner’s Claimed
Assessment Value Court Fixation
1955/56
Land.......... $ 470,000 Land. ........ $ 400,000
Bldg..'........ $1,330,000 Bldg. ......... $1,150,000
Total.......... $1,800,000 $1,100,000 Total ......... $1,550,000
1956/57
Land.......... $ 440,000 Land. ......... $ 400,000
Bldg.......... $1,310,000 Bldg. ......... $1,150,000
Total.......... $1,750,000 $1,100,000 Total. ......... $1,550,000
1957/58
Land.......... $ 440,000
Bldg.......... $1,310,000
Total.......... $1,750,000 $1,100,000
The substantial difference between the valuation, found by me for this parcel and the assessment figures set forth above, require consideration of the weight to be given to the assessment, the court’s finding in the tax certiorari proceeding, and the owner’s claimed valuation.
First as to the assessments:
Section B15-8.0 of the New York City Administrative Code requires the condemnation petition to set forth: “ 3. The amount of valuation at which each parcel of the real property to be acquired has been assessed for purposes of taxation on the city taxrolls for each of the three years preceding the date of the petition ’ ’. Similar language is found in subdivision 2 of section 125 of the Public Housing Law; subdivision 4 of section 16 of the Court of Claims Act; and 'section 52 of the Rapid Transit Law. None of these statutes indicates what weight is to be given to these assessments.
The two leading decisions of the Court of Appeals do noi recite the assessment as one of the factors in the determination of just compensation in a condemnation case. While these eases arose on appeal from awards by Commissioners of Appraisal, *263 who have much greater latitude than a court in the weight to be given to the facts (cf. Matter of Huie, 2 N Y 2d 168,170, with Matter of City of New York [A. W. Realty Corp.], 1 N Y 2d 428, 432), the statement as to which elements of value should be considered is equally applicable to a court proceeding.
In Matter of Bd. of Water Supply of N. Y. (277 N. Y. 452) the court said, per Eippet, J. (p. 458): “ Speaking generally, it may be said that, in condemnation cases, evidence as to the age, location, condition, productiveness or lack thereof, cost, and adaptable uses of the property taken or affected by the taking properly has been held relevant to the issue. Evidence of reproduction cost of structures affected less depreciation, improvements made on the property, consequential damage to portions not appropriated, and the fair market value of the property taken as of the date of appropriation may be relevant, according to the situation in a particular case. There may be many other matters open for consideration by the commissioners. Omission of an attempt to enumerate all is of no consequence here. It would be a difficult and unsatisfactory venture. No single element standing alone is decisive. In any solution by the commissioners in condemnation proceedings of the question up for determination, there is involved to an appreciable extent a problem of valuation. Neither in the Constitution nor in the act before us is ‘ value ’ specified in terms as the criterion of just and equitable compensation for the appropriation of real property. Such compensation, however, cannot be less than the ‘ fair market value ’ of the property taken in terms of cash as of the particular date of taking plus consequental damages to the owner.”
In Matter of Huie the court said, per Froessel, J. (2 N Y 2d 168, 170-171, supra): “ The Constitution provides only that the owner receive ‘ just compensation ’ for the property taken (N. Y. Const., art. I, § 7, subd. [a]); the Administrative Code (§§ K41-12.0, K41-13.0) provides for ‘ just and equitable compensation which ought justly to be made by the city ’. In the determination of that just compensation, there is no single element which is controlling, and it is competent for the commissioners of appraisal to consider all factors indicative of the value of the property, such as its fair market value as of the date of appropriation (Matter of Board of Water Supply of City of N. Y., 277 N. Y. 452, 456-458), the reproduction cost of improvements less depreciation (Matter of City of New York [Blackwell’s Is. Bridge], 198 N. Y. 84), sales of similar property (Village of Lawrence v. Greenwood, 300 N. Y. 231, 235), location (Matter of Board of Water Supply of City *264 of N. Y., supra, p. 458), income (id.; see, also, Onondaga County Water Auth. v. New York Water Service Corp., 285 App. Div. 655, 662), highest suitable use (Sparkill Realty Corp. v. State of New York, 254 App. Div. 78, 82, affd. 279 N. Y. 656), and consequential damages to property not- taken but affected by the condemnor’s use (South Buffalo Ry. Co. v. Kirkover, 176 N. Y. 301). ‘ Omission of an attempt to enumerate all is of no consequence here. It would be a difficult and unsatisfactory venture. No single element standing alone is decisive ’ (Matter of Board of Water Supply of City of N. Y., supra, p. 458).”
The assessment itself is entitled to very little weight in determining the £ £ just compensation ’ ’ which the Constitution requires to be paid to the owner. As is pointed out in Orgel, Valuation Under Eminent Domain (vol. 1 [2d ed.], § 150, p. 631): ££ Tax valuations are made by non-judicial officers who are rarely, if ever, required to have special qualifications * * * Valuation for purposes of taxation is a wholesale operation that must be completed within a short time and that must necessarily be extensive rather than intensive. In the City of New York, for example, more than 800,000 parcels of real property are assessed every year. The number of assessors is comparatively small and only a short time can be devoted to each parcel. The large number of properties coupled with the speed with which the appraisal must be made leads to the use of standardized methods that are at best but rough and ready approximations of market value.”
See, to the same effect, Jahr, Law of Eminent Domain (§ 152, p. 236). It should be pointed out further that these determinations are made ex parte without any opportunity for cross-examination.
Matter of City of New York (Marshall) (8 A D 2d 365 [1st Dept.]) reversed two awards and remanded them for a new trial. In setting aside the award of $75,900 for damage parcel 654, the court said, per McNally, J. (pp. 366-367):
££ We hold that the award for damage parcel 654 is excessive and contrary to the weight of the evidence in that it disregards the price of $13,000 at which this property was sold to the claimant by the appellant in 1954 and is more than six times the assessed valuation of $11,000.
‘1 The 1954 sale was at public auction and it is fair to assume that the price paid for the land was the best price obtainable by the City of New York. No other comparable sales appear from the record. There is insufficient evidence in the record to sustain an increase in excess of "five times the sales price of *265 this land during the three and one-half year period it was owned by the claimant. * * *
“ We feel that Special Term did not give due consideration to either the sales price of $13,000 in 1954, or the assessed valuation of $11,000, especially in view of the wide discrepancy in the estimates of experts offered by the appellant and the claimant, and the proof is woefully lacking in any attempt to reconcile the wide difference between the assessed valuation and the experts ’ opinions on value. ’ ’
The court also set aside an award of $296,350 for damage parcels 322, 323 and 324, which were assessed at $117,000, saying (p. 367): “ The trial court failed to give any weight to the assessed valuation and thus arrived at a value which is grossly excessive. In addition, the value of the improvement on damage parcel 324 depended largely on the personal liability of the tenant, a prime risk, and the effect thereof was carried over in the awards made on damage parcels 322 and 323. The record fails to disclose comparable sales and none of the sales testified to sustains the award. ’ ’
As I read the case, in the absence of competent proof to sustain the awards, the marked discrepancy with the assessed valuation was a reason for remanding for a new hearing. The same observation applies to Matter of City of New York (Esam Holding Corp.) (222 App. Div. 554, 556-557 [1st Dept.], affd. 250 N. Y. 588). These cases do not hold that assessed value must outweigh other convincing proof which satisfies the court that just compensation exceeds the amount of the assessment.
For the foregoing reasons, I agree that the conclusion reached by my learned predecessor, Mr. Justice Edeb, in Matter of Port of N. Y. Auth. (Lincoln Tunnel) (202 Misc. 1104, affd. 281 App. Div. 818 [1st Dept.], leave to appeal denied 305 N. Y. 564). He said (pp. 1107-1108): ‘ ‘ Heretofore the courts considered assessed value, in condemnation proceedings, as a factor, on the matter of valuation, but in no way binding on the court, and to be given only such consideration as the court felt it warranted * * * [The statute] merely dispenses with formal proof of the assessed valuations for the mentioned three years’ period, matters of public record. Nothing in the statute precludes the owner or claimant from rebutting- and overcoming them by contradictory and better evidence.”
In the converse of the situation at bar, an award of only 70% of the assessed value was affirmed where that was justified by the testimony. (Matter of City of New York [Mettler], 281 App. Div. 842 [2d Dept.], affd. 306 N. Y. 709.)
*266 Coming secondly to the value fixed by the court in certiorari proceedings, these are not subject 'to the objections stated by Orgel and Jahr against the valuation made by the city assessors. Such values are based on the testimony of qualified experts, which is focused on the parcel under review, and whose testimony is subject to full cross-examination.
There are three reasons, however, why even such court determined valuations cannot offset proof in the condemnation proceeding which, in the court’s judgment, establishes the just compensation to which the owner is constitutionally entitled.
First, the tax certiorari decision fixes the value as of an altogether different date from that at issue in the condemnation proceeding. Thus, the latest certiorari adjudication here (1956-57) sets the value as of January 25, 1956 (New York City Charter, § 157), while the valuation date of this proceeding is February 28, 1958 (the date of taking). The former valuation, therefore, can have no probative force on the latter.
In People ex rel. Hilton v. Fahrenkopf (279 N. Y. 49) the property was assessed at $800,000 in 1936. Special Term reduced the assessment to $704,000. In 1935 the assessment was the subject of a certiorari proceeding, wherein the court fixed the value at $489,324. “ The Appellate Division here sustained the relator’s contention that this former determination was res judicata as to the issues of value in the present proceeding and that court reduced the 1936 valuations of the Special Term accordingly” (p. 51).
The court reversed, and reinstated Special Term, saying, per Loughran, J. (pp. 52-53): “It is of the essence of an assessment that it fixes value as of a certain time. Each annual proceeding is separate and distinct from every other. Year by year an assessor must use his own judgment and must verify the roll (Tax Law, § 28). From these considerations it results that a prior judicial determination of value does not legally bind successor assessors. (People ex rel. Eckerson v. Zundel, 157 N. Y. 513.) * * * Accordingly, we conclude that (though the assessing officers have at all times been the same persons) the doctrine of res judicata can have no true application to the issues of value in recurring assessment proceedings. (Cf. Tait v. Western Maryland Ry. Co., 289 U. S. 620.) ”
If that principle applies to ‘ ‘ recurring assessment proceedings ” it applies a fortiori to a condemnation proceeding where a valuation date is two years later than the valuation date of the certiorari adjudication.
Secondly, the building value in a tax certiorari proceeding-must never exceed its reconstruction cost less depreciation. *267 (People ex rel. Manh. Sq. Beresford v. Sexton, 284 N. Y. 145, 149; People ex rel. Parklin Operating Corp. v. Miller, 287 N. Y. 126, 130.) Such a ceiling on building value does not apply in a condemnation award. (Matter of Huie, 2 N Y 2d 168, 172-173, supra.)
Thirdly, in a tax certiorari proceeding, evidence of earnings carries far less weight than in a condemnation proceeding. (Cf. People ex rel. Hotel Paramount Corp. v. Chambers, 298 N. Y. 372, 374-376, with St. Agnes Cemetery v. State of New York, 3 N Y 2d 37, 45; Matter of Port of New York Auth., 2 N Y 2d 296, 301; Mattydale Shopping Center v. State of New York, 303 N. Y. 974, 975-976.)
The final question is the weight to be given to the owner’s sworn claim of value, in its application for tax reduction.
At first blush, it seems unconscionable to award $2,403,000 for a property which the owner declared under oath to be worth only $1,100,000 a year before, in an effort to get its taxes reduced. Mature reflection, however, indicates that such a conclusory statement has no great probative value in determining value in condemnation.
The owner does not qualify as an expert. My experience in tax certiorari cases shows that the city pays little attention to the owner’s claim of value. Where a reduction is granted without trial, it is done on the basis of income, sales of comparable properties, definite facts as to the structural value, etc. And if the reduction is granted as the result of trial, it is on the basis of the foregoing factors as developed by expert or other competent testimony.
We are dealing here with a constitutional mandate that the owner receive “just compensation” for the property taken. When the court determines what such just compensation is, on the basis of the elements of value as set forth in Matter of Board of Water Supply (277 N. Y. 452, supra) and Matter of Huie (supra) it cannot constitutionally deprive the owner of that just compensation because the latter was greedy enough to try to pay less than its fair share of taxes.
Therefore, while the owner’s claim of value is relevant as an admission, it is not sufficient in this case to outweigh the more competent and convincing proof of value. As was said by Orgel (§ 151, pp. 636-637): “In the cases, however, where the owner has filed a protest against the valuation fixed by the tax assessor, or in which the taxing statutes require the owner to submit a return in which a tax assessment is fixed, the courts have generally held that the owner’s statement may properly be received as an admission against him. But these courts *268 have been careful to point out that, while they are admissible, the owner’s statements are not conclusive as to the market value in condemnation and that it has even been stated that although the declaration of value may be admissible ‘ its probative value is not highly regarded.’ ”
Where the owner’s claim in previous proceeding contains any facts which may be relevant on the issue of value, such facts are of course to be taken into consideration as an admission by the owner. But too much weight should not be allocated to the owner’s conclusory statement of value.
In Matter of City of New York (Jamaica Bay) (247 App. Div. 449 [2d Dept.], affd. 272 N. Y. 180) the court granted a motion for a new trial, on the basis of newly discovered evidence, the evidence being the owner’s protest to the Federal Government in a tax proceeding. The court there indicated the weight to be given to the owner’s statement, saying (p. 453) : “ Thus to the Federal Government it was urged that the property was purchased with a cloud on the title and was in part from eight to fifteen feet under water, which was used to reduce its value to prospective buyers, on the claim that, to be usable, it would cost so much to fill in that original value was very much a question. This was quite in accord with the views of the experts for the city, that the land under water was practically valueless. Of course, a statement made by the owner of property before a tax tribunal where he is seeking to reduce his assessment, would not be conclusive against him in a condemnation proceeding. Some allowance must be made for a tendency to assert the minimum of value in a place where it is of interest so to do, and to assert the maximum in another forum where it is helpful so to do. Nevertheless, this letter would undoubtedly have had considerable weight with the trial court, especially where such a tremendous difference in valuation was placed upon the property by the experts. This letter not only tends .to discredit the experts for the claimant, but supports the testimony of the experts for the city. If an owner in one place decries the value of his property, he should not find fault if his depreciation of the value there be given consideration in another forum, where he attempts to exaggerate. ’ ’
The principle has been fully discussed in connection with this parcel because the facts here point up the problem most strongly. The principle has been applied to the other parcels which are the subject of this condemnation proceeding, without any further discussion in connection with those parcels.
Let the Corporation Counsel prepare and submit partial tentative decree accordingly.